UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

    Plaintiff,

v.

MICHELLE DENISE SMITH,

    Defendant.

CASE No. 1:07-cr-210

HON. ROBERT J. JONKER

_____/

## **OPINION REGARDING DEFENDANT SMITH'S FIRST STEP ACT MOTION**

### INTRODUCTION

Defendant Smith pleaded guilty to a Section 841(b)(1)(B) crack cocaine offense in December 2007. The conviction exposed Defendant to a mandatory minimum sentence of five years and a maximum of forty years in prison. She was sentenced as a career offender in April 2008 to a total term of 204 months imprisonment. Defendant Smith was thirty-six years old at the time.

The matter before the Court is Defendant Smith's motion for modification or reduction in sentence under the newly enacted First Step Act, which provides for the retroactive application of certain sentencing reforms contained in the 2010 Fair Sentencing Act. (ECF No. 67). The Court appointed counsel to assist Defendant Smith with her First Step motion. Both sides have filed briefs. The government responds that Defendant is not eligible for consideration of a discretionary reduction since the same statutory penalties apply to her even accounting for the Fair Sentencing Act's reforms. (ECF No. 69). The defense disagrees and contends that the statutory penalties

applicable to Defendant Smith have been changed. It argues for a plenary resentencing with what it says is the new mandatory minimum under Section 841(b)(1)(C) being the only limit. (ECF No. 70).

The Court finds that Defendant Smith is eligible for relief under the First Step Act, but that she is not entitled to a plenary resentencing. Nor does the Court see any other need for a hearing on the fully briefed issues. The Court can and does exercise its discretion under the First Step Act to reduce Defendant Smith's sentence as provided in this Opinion and corresponding Order.

## FACTUAL AND PROCEDURAL BACKGROUND

### 1. *Defendant Smith's Charge & Plea*

On May 11, 2007, an undercover Kalamazoo Valley Enforcement Team (KVET) officer spoke with Mr. Blair Thompson about purchasing $2,000 worth of crack cocaine. A few days later, on May 17, 2007, Mr. Thompson told the officer that he had a connection "Michelle" who had the crack cocaine available. Mr. Thompson agreed to meet the undercover officer at the Red Roof Inn in Kalamazoo, Michigan to complete the purchase.

Later that day, the officer waited in a room at the Red Roof Inn, which was wired with police surveillance equipment. Mr. Thompson arrived and told the officer that there were two bags of crack cocaine, one weighing 28 grams and the other weighing 20 grams. The officer demanded to inspect the crack cocaine before making payment, and Defendant Smith and Ms. Shuquanta Buckley came into the room. Ms. Buckley was holding a brown paper bag and handed it to Mr. Thompson. Thereafter police arrested all three individuals. 47.96 grams of crack cocaine were found in the bag. Officers also found marijuana and Vicodin tablets in Ms. Smith's purse.

On September 5, 2007, Defendant Smith was charged with conspiracy to distribute five grams or more of cocaine base (crack cocaine) in violation of 21 U.S.C. §§ 846, 841(a)(1), and

841(b)(1)(B)(iii). (ECF No. 1). On December 12, 2007, Defendant pleaded guilty to the charge. While there was no written plea agreement on file, the parties agreed during the plea hearing that 47.96 grams of crack cocaine were involved in the offense. The government also agreed not to file a notice informing the sentencing court of Defendant's prior conviction for a felony drug offense.[1] During the plea colloquy Defendant Smith admitted, under oath, that on May 17, 2007, she had delivered approximately 48 grams of crack cocaine. (ECF No. 31, PageID.75).

### 2. *PSR & Sentencing*

The Final Presentence Report (PSR) prepared by the probation officer found that Defendant Smith was responsible for 147.96[2] grams of crack cocaine and 50 grams of marijuana. At the time this was equivalent to 2,073 kilograms of marijuana. (PSR ¶¶ 16-18). The quantity of narcotics triggered an initial base offense level of 32. After adjusting downward for acceptance of responsibility, the total drug offense level was 29. (PSR ¶ 37).

The PSR determined, however, that Defendant Smith qualified as a career offender because she committed the offense of conviction after sustaining two prior felony convictions for controlled substance offenses. (PSR ¶ 49). Since the statutory maximum penalty for the offense of conviction was 40 years imprisonment under Section 841(b)(1)(B)(iii), the guidelines called for a career offender offense level of 31, after adjusting for acceptance of responsibility. *See* U.S.S.G. § 4B1.1(b)(B) (2008). Level 31 being higher than the offense level calculated under Section

---

[1] Had the government filed such a notice, it would have raised the statutory penalties then applicable to Defendant from 5 years minimum and 40 years maximum imprisonment to a minimum of 10 years and maximum of life imprisonment. *See* 21 U.S.C. § 841(b)(1)(B)(iii) (2007).

[2] In addition to the 47.96 grams Defendant admitted as part of the factual basis of her plea, the PSR attributed 100 additional grams of crack cocaine as part of relevant conduct. Defendant did not contest the attribution.

2D1.1, the career offender offense level took precedence and became Defendant Smith's total offense level. (PSR ¶ 42).

The officer then scored Defendant's criminal history at seventeen points, resulting in a criminal history category of VI.[3] (PSR ¶ 67). The guideline range for a total offense level of 31 and criminal history category of VI was 188 to 235 months on the chart. (PSR ¶ 114).[4] At the April 10, 2008 sentencing the court imposed a within guidelines sentence of 204 months imprisonment, followed by a 5 year term of supervised release. The sentencing court remarked that Defendant had committed "a serious offense" that required "just punishment, taking into consideration" the Section 3553(a) factors. (ECF No. 32, PageID.96). Judgment entered on April 11, 2008. (ECF No. 29).

### 3. *Post Sentencing Matters*

Appeal and collateral attack followed. On October 29, 2009, the Sixth Circuit Court of Appeals affirmed the sentencing court's judgment and rejected Defendant's assertion that her sentence was both procedurally and substantively unreasonable. *United States v. Smith*, No. 08-1494 (6th Cir. Oct. 29, 2009). A Section 2255 motion challenging her sentence was denied as untimely. *Smith v. United States*, No. 1:11-cv-1055 (W.D. Mich. Dec. 8, 2011). The Sixth Circuit Court of Appeals has declined to issue a Certificate of Appealability. *Smith v. United States*, No. 12-1076 (6th Cir. May 24, 2012).

Defendant Smith has also sought to obtain relief from several rounds of retroactive guideline amendments. Each time, the sentencing court concluded that Defendant Smith was

---

[3] Because Defendant Smith qualified as a career offender, her criminal history was also required to be VI. *See* U.S.S.G. § 4B1.1(b) (2008). (PSR ¶ 68).
[4] Without the career offender status, Defendant Smith's Section 2D1.1 offense level of 29 and criminal history category of VI would have resulted in a guideline range on the chart of 151 to 188 months.

4

ineligible for relief, noting that Defendant's guidelines and sentence were driven by her career offender status. (ECF Nos. 53, 63 & 65).

### 4. *The Fair Sentencing Act of 2010*

In the summer of 2010 Congress passed the Fair Sentencing Act of 2010, Pub L. No. 111-220, 124 Stat. 2372 (2010). The Fair Sentencing Act reduced the sentencing disparity between crack and powder cocaine offenses by increasing the amount of crack cocaine needed to trigger the mandatory minimums established in the Anti-Drug Abuse Act of 1986. *United States v. Blewett*, 746 F.3d 647, 649 (6th Cir. 2013) (en banc); *see also Dorsey v. United States*, 567 U.S. 260, 263-64 (2012). More specifically, the Fair Sentencing Act increased the threshold quantity in 21 U.S.C. § 851(b)(1)(A)(iii) from 50 grams or more of crack cocaine to 280 grams or more. Fair Sentencing Act at § 2(a)(1). The Fair Sentencing Act also increased the threshold quantity in 21 U.S.C. § 841(b)(1)(B)(iii) from 5 grams or more of crack cocaine to 28 grams or more. Fair Sentencing Act at § 2(a)(2). Today, therefore, in order to trigger the 5 years to 40 years sentencing range of Section 841(b)(1)(B)(iii) that Defendant Smith was convicted under, the offense must involve more than 28 grams of crack cocaine.

Those changes made by the Fair Sentencing Act, however, were not retroactive. *Blewett*, 746 F.3d at 650.[5] Because Defendant Smith had been convicted and sentenced before the Fair Sentencing Act's enactment she was not, at that time, eligible for any relief.

---

[5] In *Dorsey v. United States*, 567 U.S. 260 (2012), the Supreme Court determined that the Fair Sentencing Act applied to any defendant sentenced on or after August 3, 2010, regardless of when the offense occurred. Because Defendant Smith was sentenced before August 3, 2010, *Dorsey* did not provide her with a pathway to any relief.

## 5. *The First Step Act of 2018*

On December 21, 2018, President Trump signed the First Step Act of 2018, Pub. L. No. 115-391, 132 Stat. 5194 (the "First Step Act") into law. The First Step Act "modified prior sentencing law and expanded vocational training, early-release programs, and other programming designed to reduce recidivism." *United States v. Simons*, 375 F.Supp.3d 379, 385 (E.D.N.Y. 2019). In Section 404 of the First Step Act, Congress made the Fair Sentencing Act's statutory changes for crack cocaine offenses retroactive to defendants who were sentenced before August 3, 2010:

> SEC. 404. APPLICATION OF FAIR SENTENCING ACT.
>
> (a) DEFINITION OF COVERED OFFENSE.—In this section, the term "covered offense" means a violation of a Federal criminal statute, the statutory penalties for which were modified by section 2 or 3 of the Fair Sentencing Act of 2010 (Public Law 111–220; 124 Stat. 2372), that was committed before August 3, 2010.
>
> (b) DEFENDANTS PREVIOUSLY SENTENCED.—A court that imposed a sentence for a covered offense may, on motion of the defendant, the Director of the Bureau of Prisons, the attorney for the Government, or the court, impose a reduced sentence as if sections 2 and 3 of the Fair Sentencing Act of 2010 (Public Law 111–220; 124 Stat. 2372) were in effect at the time the covered offense was committed.
>
> (c) LIMITATIONS.—No court shall entertain a motion made under this section to reduce a sentence if the sentence was previously imposed or previously reduced in accordance with the amendments made by sections 2 and 3 of the Fair Sentencing Act of 2010 (Public Law 111–220; 124 Stat. 2372) or if a previous motion made under this section to reduce the sentence was, after the date of enactment of this Act, denied after a complete review of the motion on the merits. Nothing in this section shall be construed to require a court to reduce any sentence pursuant to this section.

First Step Act of 2018, Pub. L. No. 115-319, § 404, 132 Stat 5194 (2018).

Accordingly, defendants who were convicted before August 3, 2010 of a crack cocaine offense for which the Fair Sentencing Act reduced their statutory penalties are now eligible for consideration of a reduced sentence. First Step Act of 2018, Pub. L. No. 115-319, § 404(a), (b), 132 Stat 5194 (2018). Whether to reduce the sentence of an eligible defendant is left to the reviewing court's discretion. *Id.* at § 404(c). No reduction is required.

## DISCUSSION

**1. Summary of the Court's Process**

In an earlier Order, this Court set out a two-step process for evaluating First Step Act motions. *See United States v. Boulding*, 379 F.Supp.3d 646 (W.D. Mich. May 16, 2019). The first step is determining eligibility. In *Boulding* the Court concluded that "eligibility under the language of the First Step Act turns on a simple, categorical question: namely, whether a defendant's offense of conviction was a crack cocaine offense affected by the Fair Sentencing Act." *Id.* at 651. As applied to that case, this determination meant that the quantity of narcotics (whether admitted, found by a jury, or found by a court) did not factor into the question of eligibility. That is true here as well, but this case also presents issues relating to a defendant's career offender status and changes (or not) to the guideline range. Based on the Court's approach in *Boulding*, these questions do not affect the categorical eligibility determination. They simply inform the Court's discretionary call at the second step.

At the second step, a reviewing court evaluates the motion to determine whether it should exercise its discretion to reduce a defendant's sentence. This calls for a determination of the scope of the relief available. Here the Court previously determined, and reaffirms here, that the First Step Act does not provide for a plenary-resentencing. *Id.*; *see also United States v. Davis*, No. 07-CR-245S (1), 2019 WL 1054554, at *2 (W.D.N.Y. Mar. 6, 2019) (concluding the First Step Act

does not provide for a plenary resentencing and that the defendant need not be present for a reduction in sentence); *United States v. Jones*, No. 2:05-CR-29-FL-1, 2019 WL 2480113, at *2 (E.D.N.C. June 11, 2019) (noting that under 18 U.S.C. § 3582(c) a court may not modify a term of imprisonment except for a narrow range of situations, including "to the extent otherwise expressly permitted by statute," 18 U.S.C. § 3582(c)(1)(B) and holding that "[t]he First Step Act permits the court to impose a 'reduced sentence' and 'modify' the term of imprisonment under § 3582(c)(1)(B), but it does not 'expressly permit' full resentencing."). But as the Court has also remarked, "unlike earlier rounds of retroactive crack or other drug sentencing relief, the First Step Act does not impose any artificial or guideline limits on a reviewing court. These earlier rounds of retroactive reduction proceeded under 18 U.S.C. § 3582(c)(2) based on Sentencing Commission guideline reductions and were therefore subject to the limitations built into that section. The First Step Act is different. The Sentencing Commission has nothing to do with it." *Boulding*, 379 F.Supp.3d at 653.

This means, among other things, that career offenders like Defendant Smith who did not previously receive relief under the retroactive amendments may now be able to receive a reduced sentence, if the court exercises its discretion to do so. At this point the Court considers whether to reduce a sentence by looking at the factors set out in Section 3553(a), the revised statutory range under the Fair Sentencing Act, any amendments to the guideline range, and post-sentencing conduct. *Jones*, 2019 WL 248-113, at *2.

**2. Defendant Smith is Eligible for a Reduced Sentence.**

At the first step, the Court concludes Defendant Smith is eligible for consideration of a reduced sentence under the First Step Act. Defendant Smith's offense was committed before the Fair Sentencing Act's enactment on August 3, 2010; she was further convicted under the enhanced

8

penalties found in Sections 841(b)(1)(B)(iii); and those penalties were "modified by section 2 . . . of the Fair Sentencing Act of 2010[.]" She was, accordingly, convicted of a "covered offense." The categorical limitations in Section 404(c) also do not apply to Defendant Smith. Her sentence was not "previously imposed or previously reduced in accordance" with the Fair Sentencing Act's amendments. And she has not previously moved to reduce her sentence under Section 404 of the First Step Act. Accordingly, the Court concludes that Defendant is eligible under Section 404(a) for a reduced sentence under Section 404(b).

The government's argument to the contrary is premised on its assertion that Defendant's statutory penalties and her career offender guidelines have not changed. This argument, rooted in a quantity determination, simply is not part of the analysis for determining eligibility. Indeed, nothing within Section 404 of the First Step Act requires hangs eligibility on a reduced penalty range. That a defendant's penalty exposure has not changed may inform the reviewing court when making its discretionary call, but it does not factor into the eligibility analysis.

3. **Scope of Relief**

   *a. Guideline Comparison*

At the second step the Court considers the scope of relief available to Defendant and then proceeds to determine by how much, if any, it should reduce Defendant Smith's sentence. The Court begins with a guideline range comparison. The table below demonstrates the differences between the offense level calculation as to Count 1 as it existed when Defendant Smith was originally sentenced in 2008 and the guidelines as they exist now, taking into account all intervening drug guideline amendments and the retroactive application of the Fair Sentencing Act. The chart also reflects the parties' dispute over Defendant's offense level when calculated "as it" the Fair Sentencing Act applies.

| Counts 1 | Original Guidelines | Current Guidelines |
|---|---|---|
| **Base Offense Level**<br><br>*147.96 G Crack Cocaine*<br>*50 Ounces Marijuana* | Level 32 (§ 2D1.1(c)(4))<br><br>*2,073 kilograms of marijuana equivalent* | Level 26 (§ 2D1.1(c)(7))<br><br>*529.78 kilograms converted drug weight* |
| **Adjustments for Acceptance of Responsibility** | -3 levels (§ 3E1.1(a) & (b)) | -3 levels (§ 3E1.1(a) & (b)) |
| **Total Drug Offense Level (After Acceptance)** | Level 29 | Level 23 |
| **Statutory Penalty** | 5 years to 40 years<br>*Section 841(b)(1)(B)(iii)* | Government: 5 to 40 years<br>*Section 841(b)(1)(B)(iii)* |
| | | Defense: 0 to 20 years<br>*Section 841(b)(1)(C)* |
| **Chapter Four Enhancement (After Acceptance)** | Level 31 (§ 4B1.1(b))<br><br>*Maximum 40-year Penalty* | Government: Level 31<br>(§ 4B1.1(b)(2))<br>*Maximum 40-year penalty* |
| | | Defense: Level 29<br>(§ 4B1.1(b)(3))<br>*Maximum 20-year penalty* |
| **Total Offense Level** | Level 31 | Government: Level 31 |
| | | Defense: Level 29 |
| **Criminal History Category** | Category VI | Category VI |
| **Guideline Range Before Consideration of Career Offender Status** | 151 to 188<br>(LO 29; CH VI) | 120 to 150 months<br>(LO 26; CH VI) |
| **Guideline Range After Consideration of Career Offender Status** | 188 to 235 months<br>(LO 31; CH VI) | Government: 188 to 235 months (LO 31; CH VI) |
| | | Defense: 151 to 188 months (LO 29, CH VI) |

The parties agree that Defendant Smith's guideline range continues to be driven by her career offender status, but they disagree over whether the offense level has changed. The government contends it has not because the quantity that Defendant Smith admitted to as part of the factual basis for her plea—47.96 grams of crack cocaine—is still enough to trigger the penalty provision in Section 841(b)(1)(B) originally applicable to her. That means, in turn, that the offense level that applied to her in 2008—31—continues to apply in 2019. The defense contends that the

quantity charged determines and limits the applicable statutory penalties regardless of what Defendant admitted as part of her factual basis. The Indictment in this case charged Defendant with only 5 grams of crack cocaine, an amount that now triggers the penalty provisions found in Section 841(b)(1)(C). Because that statute only provides for a maximum sentence of 20 years imprisonment, the defense argues that in applying a reduced sentence "as if" the Fair Sentencing Act were in effect an offense level of only 29 applies.

To the Court's knowledge no court has confronted the precise guideline issue presented. At least one court has found that a defendant's admitted conduct controls the statutory limit of relief under the First Step Act. *See Davis*, 2019 WL 1054554, at *2 (W.D.N.Y. Mar. 6, 2019) (defendant eligible for relief but limited by twenty year mandatory minimum under Section 841(b)(1)(A) for a conviction with a Section 851 predicate offense where Defendant had admitted to responsibility for at least 1.5 kilograms of crack cocaine). This result is consistent with the government's guideline argument but does not necessarily compel it on the guideline issue. Ultimately, the Court does not find it essential to resolve the question here because the guideline recalculation is simply one factor in the Court's consideration and not a controlling one. The statutory limit itself—whether 20 years or 40 years—is not in play because Defendant's original sentence was less than 20 years and more than 5 years in any event.

### b. *Discretionary Decision in this Case*

The Court has considered the position of both parties on the revised guideline issue. The Court has also reviewed the original PSR, and the rest of the record. The Court elects to exercise its discretion to reduce Defendant Smith's sentence under the First Step Act. In evaluating the extent of the reduction, the Court considers the guideline analysis of each side, as well as the factors set forth in § 3553(a). The original sentencing judge found a basis in these factors for a

mid-range guideline sentence under the original guideline range. All things considered, the Court is satisfied in this case that Defendant Smith's post-sentencing conduct has demonstrated a strong desire to address the root cause of her offense behavior here and in her criminal history more generally. She has completed programs focused on drug and alcohol abuse. She has also completed programs of academic study. She maintained an active and constructive correspondence with the original sentencing judge. She has been in custody for a lengthy period of time already and will still have five years of supervision to see whether she can apply the lessons she has learned in a community setting.

In weighing all these considerations, the Court finds that a custodial term of 168 months satisfies the Section 3553 factors and comports with the relief authorized by the First Step Act. All other terms of the original sentence, including the five years of supervised release, remain unchanged. This sentence reflects the purposes of sentencing, including the seriousness of the offense, deterrence to others, protecting the public, respect for the law, and providing rehabilitative opportunities. The sentence is below the revised guideline range calculated by the government but above the lowest revised guideline calculated by the defense. More importantly, in the Court's view, the sentence is the best balance of the Section 3553 factors.

The docket reflects that Defendant Smith was arrested on September 25, 2007. (ECF No. 3) she was released on bond, and thereafter was arrested on April 4, 2008, shortly before her sentencing date, for violating the conditions of her bond. (ECF No. 25). She appears to have been in continuous marshal custody since then, a period of approximately 139 months, and according to the Bureau of Prisons website Defendant is currently scheduled to be released on February 8, 2023. Considering the availability of good time credits, it is possible the sentence the Court is entering today will put Defendant Smith close to a release date. Accordingly, the Court rules that

the reduced sentence will be for no less than time served. *See United States v. Laguerre*, No. 5:02-cr-30098-3, 2019 WL 861417, at *3-*4 (W.D. Va. Feb. 22, 2019) (declining, under First Step Act, to reduce a sentence to less than time served because the need to protect the public and for deterrence directs that a defendant not be allowed to "bank time."). Moreover, the Court will further Order that this decision take effect ten days from the date of this Opinion in order to permit the Bureau of Prisons to complete certain administrative requirements, if necessary.

## CONCLUSION

Defendant Smith's pro se motion for modification or reduction of sentence under the First Step Act (ECF No. 67) is granted to the extent detailed in this Opinion, and her term of imprisonment reduced to a total term of 168 months imprisonment but no less than time served. All other terms of the original sentence, including the five years of supervised release, remain unchanged.

A separate Order consistent with this Opinion shall issue.


Dated:  July 15, 2019          /s/ Robert J. Jonker
                               ROBERT J. JONKER
                               CHIEF UNITED STATES DISTRICT JUDGE